WEBSTER, Judge,
dissenting.
In my opinion, the order to show cause was not properly issued. Accordingly, I would reverse the judgment of contempt. Given such a disposition, I would find it unnecessary to address the second and third issues raised by appellant.
Appellant, who had initially been adjudicated a delinquent child and placed on community control for what would have been the offense of second-degree misdemeanor criminal mischief if committed by an adult, was charged with violating the terms of his community control. The “Petition Alleging Violation of Community Control” filed by appellant’s community control counselor was purportedly made under oath. However, the oath stated merely that “the allegations of the foregoing Petition are true and correct according to Petitioner’s information, knowledge and belief.” (Emphasis added.) The petition alleged that appellant had violated his community control because, according to appellant’s father, he “refuses to obey his father and the household rules”; and because, according to his father and “school records,” he had been “expelled ... for[ ] defiance, disrespect and leaving campus after being told to go to in[]school suspension,” and “told not to re-enroll.”
The majority interprets the record as indicating that the trial court issued the order to show cause “on its own motion.” I am unable to read the relevant portions of the record in a way to support such an interpretation. Rather, it seems to me that a fan-reading of the relevant portions of the record compels the finding that the order to show cause was issued at the request of appellant’s community control counselor.
A hearing was held at which appellant was arraigned on the petition alleging that he had violated his community control. After appellant, through counsel, had entered a denial to the allegations of the petition and the trial court had announced that the case would be set for “a violation hearing,” appellant’s community control counselor asked whether there was “anything that we can do right now to hold him in contempt of court.” The record then reflects the following:
THE COURT: I could serve him with an order to show cause today.
[COUNSELOR]: Whatever would be a stiff consequence for him, because he pays no attention to the fact that he’s on probation.
[[Image here]]
THE COURT:.... Mr. — the Counsel- or, what orders of the Court have you been told that he has violated?
[COUNSELOR]: May I look at my court order? Off the top of my head, he’s disobeyed what his parents — he’s not obeyed all reasonable demands of his parents .... Along with that he has also been expelled from John Gorrie which he was— *671 which he entered into about a week beforehand. ... I mean the expulsion refers back to [appellant] using profane language to Mr. Kennedy. Was placed in ISSP [in-school suspension] and did not — and did not attend ISSP. He was caught leaving campus on the morning of June 5, 1995.
[[Image here]]
THE COURT: And can you be specific as to what reasonable demands of his parents he has not complied with .... [t]hat you would charge him with and it could be proved?
[COUNSELOR]: There’s the fact that when his father will ask him or even his mother, you know, whatever the situation is it will turn into an argument. And whatever, if it’s doing chores or coming home on time, he will — it will end up in an argument in which argument, he will stand up in his father’s face and at times physically threaten him.
THE COURT: Is there any proof or allegations of violation of the 6:00 p.m.[] curfew?
[[Image here]]
[COUNSELOR]: His mother can testify to him not being there.
THE COURT: All right. If they will have a seat in the lobby, I’m going to serve an order to show cause on him this morning.
It seems to me relatively clear from the foregoing that the order to show cause was issued as the result of the community control officer’s request, rather than on the trial court's “own motion.” It seems to me, further, that such an interpretation finds additional support in the language of the order to show cause: “The Court being advised that [appellant] has violated the Court’s Order by not obeying the reasonable demands of his parents, getting expelled from John Gorrie Middle School, and by violating his 6:00 P.M. curfew.”
To the extent relevant to this issue, Florida Rule of Juvenile Procedure 8.150(b)(1) provides that
[t]he court on its own motion or upon affidavit of any person having knowledge of the facts, may issue and sign an order directed to the one accused of contempt, stating the essential facts constituting the contempt charged and requiring the accused to appear before the court to show cause why he or she should not be held in contempt of court.
Neither the parties nor I have been able to discover any cases construing this language. However, this language is substantively identical to that found in Florida Rule of Criminal Procedure 3.840(a), addressing indirect criminal contempt, upon which Rule 8.150(b) appears to have been modeled. The corresponding language of rule 3.840(a) reads:
The judge, on the judge’s own motion or on affidavit of any person having knowledge of the facts, may issue and sign an order directed to the defendant, stating the essential facts constituting the criminal contempt charged and requiring the defendant to appear before the court to show cause why the defendant should not be held in contempt of court.
Accordingly, it would appear appropriate to look to cases interpreting this language from rule 3.840(a) for guidance in the interpretation of the same language in rule 8.150(b)(1).
This court has recently reaffirmed that “Florida Rule of Criminal Procedure 3.840(a) requires that the show cause order be based upon an affidavit or sworn testimony of an individual having personal knowledge of the essential facts,” and that noncompliance with this requirement “constitutes fundamental error.” Hunt v. State, 659 So.2d 363, 364 (Fla. 1st DCA1995) (reversing a judgment of indirect criminal contempt because the order to show cause had been “based upon a signed but unsworn police report”). Based on Hunt, I submit that the judgment of contempt must be reversed here, as well. To the extent that the order to show cause here was based on the community control counsel- or’s comments during the arraignment hearing on the Petition Alleging Violation of Community Control, such reliance was impermissible because the community control counselor was not under oath, and it is clear that he had no personal knowledge of the matters about which he was commenting. Rather, it is clear that his comments were based entirely on hearsay. Similarly, to the *672 extent that the order to show cause was based on the Petition Alleging Violation of Community Control, itself, such reliance was impermissible because it is clear that the allegations made by the community control counselor were based entirely on hearsay and, moreover, the petition was legally insufficient to qualify as an affidavit because the oath included the language that “the allegations of the foregoing Petition are true and correct according to Petitioner’s information, knowledge and belief.” (Emphasis added.) “An affidavit the statements of which are alleged on information and belief is, by the weight of authority, insufficient in any instance where one is required to make affidavit as to the substantive truth of facts stated.” Hahn v. Frederick, 66 So.2d 823, 825 (Fla.1953).
It seems relatively clear to me, for the reasons previously discussed, that the order to show cause was not based on the trial court’s “own motion.” However, even if it could fairly be argued that the record will support such a finding, it seems to me, further, that rule 3.840(a) and, therefore, rule 8.150(b)(1), were not intended to permit the court to issue an order to show cause “on its own motion” in a case such as that presented here.
Neither the parties nor I have been able to discover any cases addressing the intent behind either the language found in rule 3.840(a) that “[t]he judge, on the judge’s own motion ..., may issue and sign an order ... requiring the defendant to appear’ before the court to show cause why the defendant should not be held in contempt of court,” or the corresponding language found in rule 8.150(b)(1). However, my research suggests that the language in rule 3.840(a) may have been intended merely to convey that a sworn motion or petition is not always a necessary prerequisite to an order to show cause in an indirect criminal contempt proceeding. Rather, even absent a sworn motion or petition, the judge may issue an order to show cause “on the judge’s own motion,” provided that he or she has heard sworn testimony which, if true, would support an adjudication of indirect criminal contempt. See, e.g., Fla. R.Crim. P. 3.840 committee notes to 1968 adoption (indicating that “affidavit” was intended to be read as synonymous with “petition”); Paris v. Paris, 427 So.2d 1080, 1081 (Fla. 1st DCA 1983) (order to show cause may be based on “testimony given under oath before the issuing judge,” as well as on “sworn affidavit of a person with knowledge of the facts”); Thomas A. Edison College, Inc. v. State Board of Independent Colleges and Universities, 411 So.2d 257 (Fla. 4th DCA 1982) (sworn testimony before issuing judge sufficient to support order to show cause, notwithstanding lack of affidavit). Whatever the intent behind that language, it seems to me relatively clear that it could not have been intended to support issuance of an order to show cause in a situation such as that presented by this case, where the alleged contempt occurred out of the presence of the judge, and the judge has no independent knowledge regarding the facts. Such an interpretation would render meaningless the requirement that factual allegations upon which a request for the institution of indirect criminal contempt proceedings is based be made under oath, by one having personal knowledge of them. It would also permit the courts to engage in star chamber proceedings, in complete disregard of the due process requirements implicated by such serious charges.
I am also troubled by the fact that the contempt power appears to have been used here, not to uphold the dignity and authority of the court, but because the community control counselor and the trial court were dissatisfied with the dispositional alternatives available upon a finding that appellant had violated the conditions of his community control. Because of the nature of the contempt power, “a trial court should use its power to punish criminal contempt cautiously and sparingly, to punish assaults or aspersions upon the authority and dignity of the court or judge.” Hunnefeld v. Futch, 557 So.2d 916, 917 (Fla. 4th DCA 1990). Here, at the request of the community control counselor, and apparently out of a shared dissatisfaction with section 39.054(1)(a)3, Florida Statutes (Supp.1994), which set forth the procedure for handling violations of community control, the trial court resorted to indirect criminal contempt and a sentence to secure detention, *673 a dispositional alternative that would not have been available for a violation of community control. I question the appropriateness of such use of the contempt power. See Cason v. State, 604 So.2d 928 (Fla. 3d DCA 1992) (indirect criminal contempt may not be used to punish violation of condition of probation).
For all of the foregoing reasons, I would reverse the judgment of contempt. Because the majority affirms that judgment, respectfully, I dissent.